UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JORGE LUIS DELGADO,                    )     NO. CV 08-08175-CT
                                       )
            Plaintiff,                 )     OPINION AND ORDER
                                       )
      v.                               )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of                        )
Social Security,                       )
                                       )
                                       )
            Defendant.                 )
_____)

      For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
Commissioner") because the Commissioner's decision is supported by
substantial evidence and is free from material legal error.

                        SUMMARY OF PROCEEDINGS

      On December 11, 2008, Jorge Luis Delgado ("plaintiff"), filed a
complaint seeking judicial review of the denial of benefits by the
Commissioner pursuant to the Social Security Act ("the Act").  The
parties filed a consent to proceed before the magistrate judge.  On
March 13, 2009, plaintiff filed a brief in support of remand for further
proceedings.  On April 8, 2009, the Commissioner filed a brief in

1  opposition.   On April 15, 2009, plaintiff filed a reply.

2  SUMMARY OF ADMINISTRATIVE RECORD

3      1.   Proceedings

4      On October 31, 2005, plaintiff applied for disability insurance

5  benefits and social security benefits, alleging disability since an

6  April 29, 2002, on-the-job fall due to fractured ribs, and injury to

7  discs in his back and neck.  (TR 78-97.)[1]  The application was denied

8  initially and upon reconsideration.  (TR 64-68, 71-75.)

9      On July 28, 2006, plaintiff filed a request for a hearing before an

10  administrative law judge ("ALJ").  (TR 38-39.)  On December 18, 2006,

11  plaintiff, represented by an attorney and accompanied by an interpreter,

12  appeared and testified before an ALJ.   (TR 40-59.)   The ALJ also

13  considered vocational expert ("VE") testimony.  On February 22, 2007,

14  the ALJ issued a decision that plaintiff was not disabled, as defined by

15  the Act, because, while he could not continue his past heavy work

16  painting automobiles, he was still able to perform a limited range of

17  medium work.[2]  (TR 21-27).  On March 14, 2007, plaintiff filed a request

18  with the Social Security Appeals Council to review the ALJ's decision.

19  (TR 11).   On October 16, 2008, the request was denied.   (TR 5-7).

20  Accordingly, the ALJ's decision stands as the final decision of the

21  Commissioner.   Plaintiff subsequently sought judicial review in this

22

23  _____

24      [1]   "TR" refers to the transcript of the record of
    administrative proceedings in this case and will be followed by

25  the relevant page number(s) of the transcript.

26      [2]   Medium work involves lifting no more than 50 pounds at
    a time and frequent lifting of objects weighing up to 25 pounds.

27  E.g., 20 C.F.R. § 404.1567. The ALJ also found plaintiff could
    only occasionally stoop, kneel, crouch, and crawl.  (TR 24.)

28  2

1   court.

2          2.   Summary Of The Evidence

3          The ALJ's decision is attached as an exhibit to this opinion and

4   order and materially summarizes the evidence in the case.

5                          PLAINTIFF'S CONTENTIONS

6          Plaintiff essentially contends the decision is erroneous because

7   it:

8   1.   Ignored and misstated medical evidence;

9   2.   Afforded insufficient weight to the findings and opinion of

10       treating physician;

11  3.   Failed to sufficiently consider plaintiff's testimony and make

12       proper credibility findings; and,

13  4.   Relied on a residual functional capacity ("RFC") assessment that

14       was not supported by substantial evidence.

15                          STANDARD OF REVIEW

16         Under  42  U.S.C.  §  405  (g)  (2004),  this  court  reviews  the

17  Commissioner's decision to determine if: (1) the Commissioner's findings

18  are supported by substantial evidence; and, (2) the Commissioner used

19  proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir.

20  1996).   Substantial  evidence  means  "more  than  a  mere  scintilla,"

21  Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a

22  preponderance.  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

23         When  the  evidence  can  reasonably  support  either  affirming  or

24  reversing the Commissioner's conclusion, however, the Court may not

25  substitute its judgment for that of the Commissioner.  Flaten v. Sec'y

26  of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

27         The  court  has  the  authority  to  affirm,  modify,  or  reverse  the

28                                      3

Commissioner's decision "with or without remanding the cause for rehearing."   42 U.S.C. § 405 (g).   Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision.   McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.   First, it is determined whether the person is engaged in "substantial gainful activity."   If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments."   If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.   If the person can perform past

4

relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.   Issues

A.   Medical Evidence (Issue # 1)

Plaintiff asserts the ALJ erred in handling the medical evidence and that these errors "affected the outcome of the case."

While plaintiff is correct that the ALJ must make fairly detailed findings, he "need not discuss all evidence presented to [him]." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, the ALJ must explain why "significant probative evidence has been rejected." Id. at 1995 (emphasis added).  Furthermore, if evidence is cumulative of other evidence specifically addressed, the ALJ is not required to address and discount the cumulative evidence.  See Magallanes v. Brown, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ here did not materially err in handling the medical record. Any evidence the ALJ may have omitted to address or misstated was either (a) insignificant and not probative, or (b) was cumulative of other evidence that the ALJ addressed and discounted for reasons supported by substantial evidence in the record.

i.   Physician Assistant Reports

Plaintiff first contends the ALJ misstated the findings of physician assistant Jeffrey Truong.  The court finds no material error here.

1     The ALJ explained in the decision that Mr. Troung released
2 plaintiff to full work as of June 10, 2002, but that plaintiff returned
3 for treatment shortly thereafter, at which time Mr. Troung limited
4 plaintiff to light work and lifting no more than 15 pounds and reaching
5 above his shoulders.   (TR 22.)

6     Plaintiff contends the ALJ erred because this statement implies Mr.
7 Troung found plaintiff could work full time and, moreover, because he
8 contends the ALJ "failed" specifically to note that the job aggravated
9 plaintiff's rib condition and that he was then limited to only light
10 work with restrictions on lifting, pushing, and pulling.   Plaintiff
11 misreads the ALJ's decision.   The court finds no error in the ALJ's
12 recitation of Mr. Troung's statements.

13     In any event, a physician's assistant is not considered an
14 acceptable medical source, see 20 C.F.R. § 404.1513 (d) (1) (2007), and,
15 while a plaintiff may produce such evidence to help the Commissioner,
16 there is no requirement that the Commissioner accept or specifically
17 refute it.   See   Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir.
18 1990), modified on other grounds, 947 F.2d 341 (9th Cir. 1991).

19           ii.   Examining Orthopedist's Report

20     Plaintiff next contends the ALJ "failed to mention" the report of
21 Timothy Gibson, M.D., a non-treating orthopedist who examined plaintiff
22 in July 2002, three months after plaintiff's accident. (See TR 133-38.)
23 Because the ALJ appropriately discounted other cumulative evidence in
24 the record, there is no material legal error here.

25     As indicated above, an ALJ is not required to specifically evaluate
26 and discount a medical report that is cumulative of other record
27 evidence that was properly evaluated.   E.g., Vincent v. Heckler, 739

28

F.2d at 1394-95.

Dr. Gibson opined that plaintiff's rib injury was healing and expected to be asymptomatic within a few months. (TR 137.) With respect to plaintiff's back pain, Dr. Gibson noted that plaintiff's subjective complaints appeared to be out of proportion given Dr. Gibson's findings and that Dr. Gibson could find no "explanation for [his] continued" back pain. Accordingly, he recommended a lumbar MRI and opined that plaintiff was limited to lifting, pushing, pulling no more than 15 pounds and only occasional bending and stooping. (Id.)

In his decision, the ALJ found that a similar preliminary diagnosis by Lawrence A. Feiwell, M.D., in 2005 was disproved by lumbar MRI results that showed no major disc protrusion, stenosis, or compression fracture. (TR 23, 195-96.) Plaintiff does not specifically challenge the ALJ's assessment of Dr. Feiwell's report. Accordingly, the court finds that the ALJ was not required specifically to address Dr. Gibson's preliminary diagnosis, which was cumulative of Dr. Feiwell's opinion and disproved for the same reason.

Furthermore, Dr. Gibson's report is not probative because it was based on a one-time examination that occurred in 2002 and does not on its face purport to indicate plaintiff could or has suffered from a disability for more than one year. See Vincent v. Heckler, 739 F.3d at 1394-95 (the ALJ must explain reasons for rejecting only "significant probative evidence").

### iii.   2002 and 2004 Medical Treatment

Plaintiff next contends the ALJ erred by stating plaintiff did not receive treatment from July 2002 to 2005, because Dr. Feilwell's report refers to two epidural treatments plaintiff received by Dr. Mary Jo Ford

in October and November 2002 and to two 2004 appointments with Dr. Feilwell. (See TR 202.) The court finds no material legal error here.

First, the ALJ's conclusion that plaintiff did not seek treatment for three years did not underpin any aspect of his non-disability finding. Although an ALJ may consider a plaintiff's failure to seek treatment in making a credibility finding, see Smolen v. Chater, 80 F.3d 1272, 1281 (9th Cir. 1996), the ALJ did not do so here. (See TR 24.) He also did not consider plaintiff's failure to seek treatment in connection with his weighing of any medical evidence. (See TR 22-23.)

Furthermore, plaintiff did not provide any records documenting these appointments to the ALJ. The ALJ's duty to seek out records to augment plaintiff's evidence is triggered only if the evidence presented to him is ambiguous or if the ALJ determines the record is inadequate to allow for proper evaluation. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Neither was the case here. The ALJ did not find that the evidence was capable of two interpretations. Nor was the record inadequate to allow for proper evaluation. Dr. Feilwell's report evaluated the 2002 epidural treatments by Dr. Ford and concluded that, based on his review of the medical evidence, they were not indicated and that he would not recommend any further epidural injections. (TR 195-96, 202.)

### iv.   Physician's Capacity

Plaintiff next contends the ALJ erred because he referred to Dr. Feiwell as a "treating" orthopedist and not as an "agreed medical examiner."[3]   Again, plaintiff does not contend the ALJ erred in

---

[3]   "Agreed medical examiner" is a worker's compensation term of art that refers to a physician who is selected by the parties

discounting Dr. Feiwell's preliminary diagnoses.  Accordingly, any error here is harmless.

v.   Length of total temporary disability

Plaintiff next contends the ALJ mistated the findings and assessments of Samuel Chan, M.D., because the decisions says Dr. Chan told plaintiff to remain off work for six weeks, while Dr. Chan actually instructed plaintiff to remain off work for on year.  Plaintiff misreads the ALJ's decision.

The ALJ actually stated that "Dr. Chan cites limited range of motion of the cervical and lumbar spine, paraspinal tenderness, nerve testing showing paraspinal muscular weakness, and positive straight leg raise testing in his persistent pronouncements that the [plaintiff] is to remain off work for the next six weeks."  (TR 23.)  The plain meaning of this sentence is that Dr. Chan repeatedly told plaintiff to remain off work for six weeks, which is what plaintiff contends the medical reports suggest.

In any event, as is discussed below, the ALJ offered significant and legitimate reasons based on substantial evidence in the record for discounting Dr. Chan's opinion.  His evaluation of these particular statements were likewise not materially erroneous.

For all of these reasons, the court finds the ALJ's handling of the evidence challenged by plaintiff is free from material legal error.

B.   Treating Physician's Opinion   (Issue # 2)

Plaintiff contends that the ALJ erred when he did not give weight

---

together when an injured worker is represented by counsel and who is to assess disputed medical issues. Cal. Code. Regs., tit. 8, § 1 (f).

to the opinions of the treating physician, Dr. Chan, whom plaintiff retained at the suggestion of his attorney.

When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Greater weight must generally be given to the opinion of treating physicians, but in the case of a conflict the ALJ may reject the opinion of a treating physician if he gives "specific, legitimate reasons" for doing so. Id.

"Specific and legitimate reasons" include, for example, that the opinion is conclusory, brief, and unsupported by record or objective medical findings, Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004), or, if the record supports the ALJ in discounting a plaintiff's credibility, premised on the plaintiff's subjective complaints. Tonapetyan v. Halter, 242 F.3d at 1149.

Here, the ALJ contrasted the conflicting medical opinions and findings of Dr. Chan with those of Drs. Yashrouti and Hajj, and he elected to give the opinion of Dr. Chan little weight for the following significant and legitimate reasons.

First, the ALJ indicates Dr. Chan's opinions were, on their face, not based on any objective tests. (TR 23.) Indeed, Dr. Chan's restrictive RFC assessment, which plaintiff provided to the Commissioner only after his hearing and which he contends the Appeals' Council erred in discounting, was facially based only on plaintiff's self-reports of "muscle spasm of the mid and lower back." (TR 358.) No clinical findings or laboratory test results were referenced or provided to the Appeals Council in support of the RFC. (Id.) The ALJ is not required to give any weight to the opinion of a physician that is not based on

medical evidence.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d at 1195.

Plaintiff contends the ALJ erred because he did not specifically discuss why Dr. Chan's other preliminary diagnoses–of cervical, thoracic, and left chest wall sprain or strain–were not credited.  (See TR 249-56.)  The court finds this was not a material error.  These preliminary concerns likewise were not based on independent medical tests.  The only test Dr. Chan refers to is a chest x-ray which showed plaintiff's left rib fracture.  (TR 262.)  The ALJ specifically found elsewhere that Dr. Feiwell's similar preliminary concerns about thoracic injury were disproved by MRI testing, which reports Dr. Chan did not consider or address.  (See TR 23, 195-96.)  Additionally, there is not substantial evidence in plaintiff's medical records suggesting cervical spine strain or sprain.  (See, e.g., TR 216-21, 225-27, 206.)

Furthermore, the ALJ is not required to give weight to the opinions of a physician that are based on plaintiff's self-reporting when, as in this case, and as discussed below, the ALJ has found plaintiff not to be credible.  See Tonapetyan v. Halter, 242 F.3d at 1149.  Here, the ALJ concluded that, because the evidence indicated plaintiff "likely . . . manipulated" the subjective tests upon which Dr. Chan based his opinions, Dr. Chan's opinions were entitled to little weight.  (TR 23.)

This finding and the ALJ's consequent determination that Dr. Chan's opinions are not entitled to great weight is supported by substantial evidence and free from material legal error.

C.   Plaintiff's Credibility (Issue # 3)

Plaintiff contends the ALJ erred in finding his subjective complaints not to be credible.

11

The Commissioner's assessment of plaintiff's credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Although the ALJ may not reject plaintiff's testimony regarding plaintiff's limitations solely on the basis that they are not supported by objective evidence, he may use "ordinary techniques of credibility evaluation," such as considering any inconsistent statements in plaintiff's testimony, so long as he sets out specific, convincing reasons for finding plaintiff not to be credible. Tonapetyan v. Halter, 242 F.3d at 1147-48 (citation omitted). The absence of an objective medical basis supporting the degree of severity of subjective complaints is "one factor to be considered in evaluating the credibility of the testimony and complaints." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citation omitted).

Here, the ALJ found that plaintiff's subjective pain complaints were not sufficiently credible to justify any further limitation than those established by the objective medical record for the following specific and legitimate reasons.

First, the ALJ found that plaintiff's allegations of total disability are not supported by his medical records or treatment. (Tr 24.) Specifically, plaintiff states that he can stand for no longer than ten minutes at a time, and walk for only two blocks and very slowly. The ALJ observed that there was no evidence in the record of the type of muscle disuse atrophy that would be consistent with such severely limited activity. (Id.)

Second, the ALJ found that plaintiff allegations of disabling pain were inconsistent with the fact that he treated that pain only with non-prescription Tylenol on an as-need basis. (Id.) The ALJ concluded that

it was reasonable to assume that, if plaintiff were disabled and in pain to the degree claimed, he would have sought more aggressive pain treatment. Plaintiff contends this finding is erroneous because Dr. Chan prescribed Vicodin for him. However, plaintiff self-reported that he used either no medicine or Tylenol to control his pain from 2004 onward. (TR 93-114.) Furthermore, Dr. Chan's decision to prescribe a more potent pain killer was based, as discussed above, only on plaintiff's subjective pain statements and not on independent testing. Plaintiff cannot bootsrap his credibility based on medical treatment that derived wholly from his subjective statements. In any event, the ALJ properly rejected Dr. Chan's opinions, as was discussed in the prior section. Accordingly, he was not obliged to crediting Dr. Chan's attendant treatment choices.

Third, the ALJ found plaintiff's testimony that he needed a cane to ambulate was inconsistent with his presentation to physicians, where he appeared for multiple appointments without one. (See TR 24, 217, 226.) Plaintiff contends this finding is erroneous because he went to one appointment with a cane. This is not substantial evidence to overcome the ALJ's credibility finding. The appointment plaintiff refers to took place in July 2005. (See TR 203.) Dr. Chan's 2006 records do not indicate plaintiff presented with a cane. (E.g., TR 249-58.) Indeed, plaintiff testified that no doctor prescribed a cane. (TR 49.)

Accordingly, the ALJ's credibility finding is based upon substantial evidence and free from material legal error.

C.   RFC Assessment (Issue # 4)

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ does not explain why he includes

particular restrictions and why he omits restrictions opined by treating physicians at the Concentra Occupational Medical Center.

The RFC is the most an individual can still do after considering the effects of any physical or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545.

In assessing a plaintiff's RFC, the Commissioner considers all relevant evidence, including medical evidence and plaintiff's testimony. Id. The ALJ is not, however, required to provide a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Nor, in setting out the RFC, is he required specifically to discount evidence that is insignificant, not probative, or that is cumulative of other evidence he specifically addresses. See Magallanes v. Brown, 881 F.2d at 755.

Because these particular medical records were cumulative of other discounted evidence and, in any event, were not probative, the ALJ was under no obligation specifically to address their proposed limitations.

First, the medical records plaintiff points to are not probative of disability. They reflect treatment for only three months after plaintiff's accident, from April to July 2002. They indicate plaintiff was, in his words to the physicians, "improving." (E.g., TR 149, 155.)

Additionally, the ALJ analyzed and discounted other cumulative evidence in the record, including the reports of Drs. Chan and Feiwell on the basis that subsequent MRI reports disproved any preliminary concerns. (TR 22-23.) Therefore, he was not obligated to run through the repetitive exercise of spelling out why he discounted this evidence as well.

14

In any event, the RFC found by the ALJ is narrower than that opined by examining physician Dr. Yashrouti, who opined that plaintiff was capable of continuing to do heavy work, i.e., lift and carry 100 pounds occasionally and 50 pounds frequently, and stand, walk, and sit without restriction, which assessment the ALJ found to be supported by the medical record overall.  (TR 23, 221.)  Thus, even were there an error here it would be harmless.

Therefore, the RFC assessment is supported by substantial evidence and free from material legal error.

CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner.  <u>Flaten v. Sec'y of Health and Human Servs.</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED:  4/16/09

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

15

**21**

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

**IN THE CASE OF**

Jorge L Delgado
(Claimant)

Jorge L Delgado
(Wage Earner)

**CLAIM FOR**

Period of Disability,
Disability Insurance Benefits, and
Supplemental Security Income

(Social Security Number)

### INTRODUCTION

On October 19, 2005 the claimant filed applications for Disability Insurance Benefits and Supplemental Security Income payments. The claim was denied initially and on reconsideration, and a request for hearing was timely filed. The claimant appeared and testified through Spanish interpreter, Patricia S. Bogen, at a hearing held on December 18, 2006 in Long Beach, CA. Vocational expert, E.T. Kurata, also appeared and offered testimony. Brian Yamada, an attorney, represents the claimant in this matter.

### ISSUES

The general issue is whether the claimant is entitled to a period of disability, Disability Insurance Benefits, and eligible for Supplemental Security Income payments under Sections 216(i), 223, and 1614(a)(3)(A), respectively, of the Social Security Act. The specific issue is whether he is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

BEST COPY OBTAINABLE

See Next Page

**EXHIBIT**

Jorge L Delgado 

With regard to the claim for a period of disability and Disability Insurance Benefits, the claimant meets the nondisability requirements set forth in Section 216(i) of the Social Security Act and is insured for disability benefits through the date of this decision.

Upon reviewing all of the evidence of record, the undersigned Administrative Law Judge concludes the claimant is not disabled within the meaning of the Social Security Act.

## EVALUATION OF THE EVIDENCE

The claimant is a 48-year-old individual, born on April 18, 1958, with an eighth-grade education. His past work experience includes employment as a painter helper and as a laborer. He alleges that he became disabled on April 29, 2002 due to fractured ribs, discs in back injured, and neck problems. The vocational evidence confirms that the claimant has not engaged in any substantial gainful activity since the date the claimant alleges he became disabled. The claimant does not have an impairment or combination of impairments that meets or equals the level of severity required by the Listing of Impairments in Appendix 1 of Subpart P, Regulations No. 4. Although his impairments do prevent him from the performance of his past relevant work, they do not prevent him from performing jobs that exist in significant numbers in the national economy, as attested to by vocational expert and as indicated by the framework of Medical Vocational Guideline Rule 203.18. Consequently, the undersigned finds that the claimant has not been disabled at any time through the date of this decision.

The claimant testified that he has back pain exacerbated by walking, bending, or lying down. It radiates to his lower extremities. He can walk for 30 minutes at a time. He has not had surgery and has not had epidural injections in two years (Testimony).

The claimant was initially injured in an on-the-job accident on April 29, 2002, in which he broke several ribs and experienced subjective back pain (Exhibit 2-F). After the injury he had physical therapy until June 10, 2002, at which point he stated that he has only very mild occasional pain. He was released to return to full duty as of June 10, 2002 (Exhibit 3-F: 25). Shortly thereafter, he was reduced to work involving lifting no more than 15 pounds and no reaching above his shoulders (Exhibit 3-F: 23). In July, 2002, he was told to lift no more than ten pounds and to bend no more than once per hour (Exhibit 3-F: 12). 2002 X-rays and MRIs showed minimal degenerative changes L3-L5, with no disc protrusion or extrusion, spinal stenosis, or neural foraminal narrowing (Exhibits 3-F: 54; 2-F: 7).

After July, 2002, he did not return for more treatment until May, 2005, at which point he had an MRI that showed mild to moderate lumbar hyperlordosis and degenerative disc disease with no major disc protrusion or central canal stenosis at any level (Exhibit 4-F: 21).

In 2005, the claimant's treating orthopedist, Lawrence A. Feiwell, M.D., stated that the claimant may have compression fractures of the spine. He pointed out that this conclusion was based on the claimant's history and examination results, but he could not confirm the diagnosis without current MRIs of the spine (Exhibit 4-F). I point out that Dr. Feiwell's preliminary diagnosis was

BEST COPY OBTAINABLE

See Next Page

EXHIBIT


disproved by MRI results that showed no major disc protrusion, stenosis, or compression fracture.

In December, 2005, the claimant underwent examination with orthopedist, Ibrahim Yashrouti, M.D., at the request of the Disability Determination Service (DDS) (Exhibit 5-F). The claimant held his hand with his arm and covered his eyes, constantly grimaced, grunted and shut his eyes as if in great pain (Id. at 2). However, he ambulated without difficulty and without a limp or assistive device. He was able to walk on his heels and toes. He could squat completely and return to standing without help or support. His straight leg raise testing was negative bilaterally, sitting and supine. He had normal motor strength, bulk, and reflexes. He had no abnormal findings on examination, except for dramatically reduced subjective ranges of motion of the lumbar spine, including 60/90 flexion, 10/30 extension, 20/30 lateral bending, 30/45 rotation. His X-rays of the lumbar spine were unremarkable. As such, Dr. Yashrouti recommended that he has no severe physical impairment (Exhibit 5-F).

At an August 30, 2006 orthopedic consultation with Ahmad Hajj, M.D., the claimant presented without an assistive device (Exhibit 7-F). He complained of mid- to lower- back pain and buttock pain with radiation into both lower extremities, left more than right, with associated numbness and tingling. He had positive straight leg raising bilaterally at 20 degrees supine, but negative seated straight leg raise; lower extremity motor power was 5/5; sensation was subjectively decreased in the left lower extremity, as compared with the right; reflexes were equal and reactive; his subjective range of motion was limited to 40/90 flexion, 10/25 extension, rotation 20/25; he had tenderness to palpation at the lower thoracic area, normal lumbar lordosis without spasm (Exhibit 7-F). Dr. Hajj did not recommend a residual functional capacity.

The claimant was initially seen by Samuel Chan, M.D., J.D., on February 23, 2006 (Exhibit 8-F). He had tenderness throughout his lumbar and thoracic sparaspinals on palpation. He was diagnosed with cervical and thoracic sprains and rule out lumbosacral discopathy (Exhibit 8-F: 45). Dr. Chan cites limited range of motion of the cervical and lumbar spine, paraspinal tenderness, nerve testing showing paraspinal muscular weakness, and positive straight leg raise testing in his persistent pronouncements that the claimant is to remain off work for the next six weeks secondary to pain. Dr. Chan's assessments are not granted controlling evidentiary weight because his preliminary diagnosis of lumbosacral discopathy was, in fact, ruled out by MRI testing, although Dr. Chan apparently never saw the reports. Also, Dr. Chan's opinion was based on findings the claimant is likely to have manipulated to influence Dr. Chan's opinion. For example, the claimant's straight leg raise testing, which Dr. Chan explicitly relies on in his assessment, was anything but consistent: positive bilaterally with Dr. Chan, positive at 20 degrees supine and negative seated with Dr. Chan six months before (Exhibit 7-F), and completely negative a year before that (Exhibit 5-F). Also, both Drs. Hajj and Yashrouti stated that the claimant subjectively limited his ranges of motion of the spine, which, again, is a factor that Dr. Chan explicitly relied on in reaching his residual functional capacity conclusions. The undersigned cannot help but find that Dr. Chan's residual functional capacity conclusions were unduly influenced by the claimant's subjective statements and contradicted by objective medical findings.

BEST COPY OBTAINABLE

See Next Page

EXHIBIT

Jorge L Delgado 

The undersigned finds that the claimant can lift and carry objects that weigh up to 50 pounds occasionally and 25 pounds frequently. He can no more than occasionally stoop, kneel, crouch, and/or crawl.

In making my determinations, the undersigned has also considered the claimant's subjective complaints. However, I, the undersigned, do not find the claimant's statements sufficiently credible to justify any further limitations than those established by the objective medical record. I find that the claimant's allegations of total disability are disproportionate with his medical records. The claimant stated that he can stand for no longer than ten minutes at a time and can walk for only two blocks, and very slowly (Exhibit 3-E). Nonetheless, there is no evidence of muscle disuse atrophy that would be consistent with such severely limited activity.

Furthermore, the claimant's subjective complaints are not consistent with the treatment he receives. He alleged that he is in constant pain, but treats his pain with only nonprescription Tylenol on an as-needed basis and has not sought more aggressive pain treatment (Exhibits 3-E: 5-F: 1). It is reasonable to assume that if the claimant were as disabled as he claimed, he would have told his doctor, and the doctor would have ordered more aggressive treatment. The claimant stated that he uses a cane intermittently, but did not present with his cane at doctors' appointments (Id.).

Having determined that the claimant is capable of work, albeit with the restrictions described above, a determination must be made whether she retains the residual functional capacity to perform her past relevant work or other work existing in significant numbers in the national economy.

The vocational expert testified that the claimant's past relevant work is best characterized as that of a painter helper (DOT # 845-684-014, heavy exertion, skilled) and laborer (DOT # 922.687-058, medium exertion, unskilled). The vocational expert further testified that a person with characteristics like the claimant's would not be able to perform any of the claimant's past relevant work because it is too exertionally demanding for his current exertional capacity. I accept and adopt the vocational expert's testimony.

Once the claimant has established that he has no past relevant work or cannot perform his past relevant work because of his impairments, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his residual functional capacity, age, education and work experience.

The claimant's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's residual functional capacity and vocational profile.

Born on April 18, 1958, the claimant is currently 48 years old. This is defined in the regulations as a younger individual (20 CFR §§ 404.1563 and 416.963). He is unable to communicate in

BEST COPY OBTAINABLE

See Next Page



Jorge L Delgado 

English and has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case.

The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. Based upon the claimant's residual functional capacity, he is capable of performing a significant range of medium work as defined in 20 CFR §§ 404.1567 and 416.967.

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he can also do sedentary and light work.

If the claimant were capable of performing the full range of medium work, a finding of "not disabled" would be directed by the Medical-Vocational Guidelines. The claimant's ability to perform all or substantially all of the requirements of medium work is impeded by additional exertional and/or non-exertional limitations. An impartial vocational expert may be used to help determine whether or not there are a significant number of jobs in the national economy that the claimant can perform given his residual functional capacity and other vocational factors.

The Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined. The vocational expert testified that assuming the hypothetical individual's specific work restrictions, he is capable of making a vocational adjustment to other work. The vocational expert testified that given all of these factors the claimant could work as a folder/bender (DOT # 641.687-010, medium exertion, unskilled), of which there are 7,000 jobs locally and 180,000 jobs nationally, and as a laundry laborer (DOT # 681.687-018, medium exertion, unskilled), of which there are 1,300 jobs locally and 20,000 jobs nationally. The undersigned accepts and adopt the testimony of the vocational expert.

Based on the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 203.18.

For all the foregoing reasons, the Administrative Law Judge concludes that the claimant retains the capacity for work that exists in significant numbers in the national economy and is not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

BEST COPY OBTAINABLE

See Next Page



Jorge L Delgado 

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's history of thoracic compression fracture and cervical degenerative disc disease are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: he can lift and carry objects that weigh up to 50 pounds occasionally and 25 pounds frequently. He can no more than occasionally stoop, kneel, crouch, and/or crawl.

7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

9. The claimant is "unable to communicate in English" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a folder/bender and as a laundry laborer.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

BEST COPY OBTAINABLE

See Next Page



Jorge L Delgado 

## DECISION

It is the decision of the Administrative Law Judge that, based on the applications filed on October 19, 2005, the claimant is not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act.

John C. Tobin
Administrative Law Judge

FEB 2 2 2007
_____
Date

BEST COPY OBTAINABLE